UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TONY WILLIAMS, | Case No. 3:12-cv-00660-MMD-WCG |
| Plaintiff, | ORDER |
| v. | |
| S.L. FOSTER, et al., | |
| Defendants. | |

Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections, has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and filed an application to proceed in forma pauperis (IFP). The Court screened the original complaint and dismissed it with leave to amend. The matter of payment of the filing fee shall be temporarily deferred. An amended complaint was filed, but before the Court entered a screening order on that complaint, a Status Report was filed by the State indicating that the matter had not settled (dkt. no. 12). As a result, the Court entered an order granting IFP and directing service of the complaint (dkt. no. 13).

It has now come to the Court's attention that the matter was never submitted for settlement discussions and that the status report was likely filed in the wrong matter. The previous order shall be vacated and the amended complaint will be screened.

Plaintiff has also filed two motions for service of summons (dkt. nos. 8 and 14) and a motion to withdraw the motion for service (dkt. no.15). The service of summons will be directed once there is a viable complaint on file. The motion to withdraw the request will be granted, rendering the motions for service moot.

I.      SCREENING PURSUANT TO 28 U.S.C. § 1915A

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696, 699 (9th Cir. 1988). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act of 1995 (PLRA), a federal court must dismiss a prisoner's claim, "if the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d. 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v.*

*Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. See *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. See *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.; see Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). See *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

///

///

## II. SCREENING OF THE COMPLAINT

Plaintiff is a prisoner of the state of Hawaii who is housed in the Ely State Prison ("ESP") as an "inmate boarder." Plaintiff alleges that the prison administration is violating the terms of the "Contract between the State of Hawaii and the State of Nevada for the implementation of the Interstate Corrections Compact," section 14.

### A.   Count One

In this claim for relief, plaintiff complains that he has been denied opportunities to participate in programs that are available to other inmates in the Nevada Department of Corrections (NDOC) system, although they are not available in ESP, where plaintiff is currently held, in violation of the terms of that contract. Specifically, plaintiff complains he is denied the opportunity to participate in the industrial programs, in occupational training or college courses, which are offered to other inmates in other NDOC facilities. In a personal attempt to make up for the lack of programming offered at ESP, plaintiff alleges that he writes fiction, but is hindered in these efforts because he does not have access to computers or computer programs for purposes of writing and editing his work.

Plaintiff alleges that the Interstate Compact's terms provide him with a state created liberty interests in these programs and to a classification which allows him to participate in these programs. Plaintiff sought classification to medium security where the various programs he desires are available. Plaintiff further alleges that he notified defendant Caseworker Mike Oxborrow, through a grievance, of his complaints, but that the defendant failed or refused to correct the wrong, despite having the authority to do so. The classification change was denied as "inappropriate."

Plaintiff further contends that denial of access to these programs will likely result in the loss of an opportunity to successfully seek commutation of his sentence from the Governor of Hawaii because the continuing classification to the maximum security levels of ESP suggests that he is also inappropriate for release from custody. Plaintiff finally complains that, although Nevada provides a point system for inmates with points being reduced over time for good behavior, his point score has not been reduced.

Plaintiff appealed the denial of the classification change to Rene Baker, Warden of ESP. The appeal was also denied. Continuing up the chain, plaintiff appealed to defendant S.L. Foster, who also denied relief.

To find a state-created liberty interest, it is necessary to find that state law imposes substantive limitations on the exercise of official discretion. *Roberts v. Spalding*, 783 F.2d 867, 870-871 (9th Cir.1986); *Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 844-845 (9th Cir.1985). Plaintiff cites to NRS 215A, Article IV (e), as mandating that he, as an out-of-state prisoner, is entitled to be treated equally to inmates of Nevada. This provision of Nevada law provides:

> (e) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

NRS 215A, Article IV(e)(emphasis added).

Plaintiff has failed to state a claim for a constitutional violation or for the deprivation of a state-created liberty interest under this law. He fails to acknowledge that he, while housed in ESP as a maximum security inmate, is, in fact, being treated as any other Nevada maximum security inmate house in ESP.

His equal protection claims survive, however. As previously noted, the Fourteenth Amendment right to equal protection is not lost upon incarceration. *See e.g., Baumann v. Arizona De't of Corrections*, 754 F.2d 841 (9th Cir. 1985). To prevail on an equal protection claim, plaintiffs must show (1) that they have a fundamental personal right or (2) that they were intentionally discriminated against as a member of a suspect impermissible classification or (3) that the prison regulation was not reasonably related to a valid penological interest. *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir.1990); *see Turner v. Safley*, 482 U.S. 78, 89-91, 107 S.Ct. 2254 (1987).

The proper inquiry here is whether plaintiff's inability to obtain a lower disciplinary score and move to a lower security institution reasonably furthers a legitimate

penological interest. *See Daniel v.Rolfs*, 29 F.Supp.2d 1184 (E.D. Wash. 1998). That question can only be answered by defendants.

Under the Nevada provision cited above, if inmates at ESP are entitled to have their security score adjusted for good behavior, plaintiff should also be entitled to have his score similarly adjusted. Plaintiff is entitled to be treated as other inmates housed in ESP, including, it is assumed, being allowed to lower or increase his security score based on his behavior. Plaintiff has stated a colorable claim for a violation of his equal protection rights. This claim may proceed as to defendants Oxborrow, Baker, and Foster on the equal protection claim related to plaintiff's security score.

**B.     Count Two**

Plaintiff alleges that the Nevada Department of Corrections (NDOC) has failed to provide a safe method of ascent and descent from the upper bunk in the prison cells, which sit approximately five feet above the ground. He further alleges that there is no safe handhold to facilitate the necessary step up onto the table top, which is the only means available to ascend to the upper bunk. He argues that inmates may have a difficult time making the climb and descent without risk to their safety, particularly inmates with arthritis or injuries. Plaintiff's amendment specifies that he has suffered "minor" injuries and risk of harm in attempting to negotiate the climb to and from the upper bunk. He alleges that he did not seek medical care or report other incidents of harm because he would be charged $250 for medical care. He alleges that he grieved the conditions and his grievances were denied. However, he also alleges since he complained he was reassigned to a lower bunk.

Conditions of confinement may, consistent with the constitution, be restrictive and harsh. *See Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *Osolinksi v Kane,* 92 F.3d 934, 937 (9th Cir. 1996). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy,* 801 F.2d 1080, 1107 (9th Cir. 1986); *see also Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray,* 682 F.2d 1237, 1248 (9th Cir. 1982). A prison

6

official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). The responsible prison official must both be aware of facts from which the inference of the existence of the excessive risk of harm may be drawn, and he must also draw the inference. *Id.*

Although the conditions described by plaintiff may not be ideal, his own words undermine this claim. He admits that he has suffered only a minor injury and that he no longer is assigned to an upper bunk. Thus, prison officials, including the official who denied plaintiff's grievances about the upper bunk access, responded to his concerns, once he made them known. The fact that the officials refused to order a complete redesign and reconstruction of the institutional bunking system based on plaintiff's individual grievance does not evidence deliberate indifference. This claim shall be dismissed with prejudice.

### C. Count Three

Plaintiff claims an Eighth Amendment violation caused by the NDOC and the ESP administration permitting the prison to become overcrowded, thereby denying inmates housed there the "basic human needs." Plaintiff alleges the double cell population exposes inmates, including himself, to a risk of harm from other inmates when they must be handcuffed inside their cell while their cellmate remains uncuffed. This situation, the Court infers, offers the uncuffed inmate an opportunity to attack the restrained inmate. Plaintiff avers that he has requested the administration remedy this situation, but the request has been refused.

As amended, plaintiff's claim is still hypothetical. He has suffered no injury and admits that he is housed in a unit that does not require cuffing up to exit the cell except in extraordinary circumstances. He has not identified an injury that he suffered arising from these conditions of confinement which would permit him to bring this claim. The claim will be dismissed with prejudice.

### III. CONCLUSION

This amended complaint will be allowed to proceed against defendants Oxborrow, Baker and Foster on the single claim in Count One of denied equal protection resulting from the alleged denial of adjustment in plaintiff's security point score. All other claims will be dismissed with prejudice.

It is therefore ordered that the Court's order of September 24, 2013 (dkt. no. 13) is hereby vacated. The matter of the IFP application remains deferred.

It is further ordered that the amended complaint may proceed on the equal protection claim raised in Count One as to defendants Oxborrow, Baker and Foster. All remaining counts and defendants are dismissed with prejudice.

It is further ordered that the motion to withdraw the motions for service (dkt. no. 15) is granted. The motions for service (dkt nos. 8 and 14) are denied as moot.

It is further ordered as follows:

1. Given the nature of the claims that the Court has permitted to proceed, this action is stayed for ninety (90) days to allow plaintiff and defendant(s) an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this ninety-day stay period, no other pleadings or papers shall be filed in this case, and the parties shall not engage in any discovery. The Court will decide whether this case will be referred to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before ninety (90) days from the date this order is entered, the Office of the Attorney General shall file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for the defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

///

2. "Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

3. If the case does not settle, plaintiff will be required to pay the full $350.00 filing fee. This fee cannot be waived. If the plaintiff is allowed to proceed in forma pauperis, the fee will be paid in installments from his prison trust account. 28 U.S.C. § 1915(b). If plaintiff is not allowed to proceed in forma pauperis, the $350.00 will be due immediately.

4. The Clerk shall electronically serve a copy of this order and a copy of plaintiff's amended complaint on the Office of the Attorney General of the State of Nevada, attention of the Supervising Secretary, Kat Howe.

5. The Attorney General's Office shall advise the Court within twenty-one (21) days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the defendants for the purpose of settlement. No defenses or objections, including lack of service, shall be waived as a result of the filing of the limited notice of appearance.

It is so ordered.

DATED THIS 2nd day of October 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TONY WILLIAMS,<br><br>         Plaintiff,<br><br>v.<br><br>S.L. FOSTER, et al.,<br><br>         Defendants. | Case No. 3:12-cv-00660-MMD-WCG<br><br>REPORT OF THE OFFICE OF THE ATTORNEY GENERAL RE RESULTS OF THE 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS FORM. THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**

  On _____ *[the date of the issuance of the screening order]*, the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case: The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

1
2
3
4
5

_____ A mediation session with a court-appointed mediator was held on _____ [enter date], and as of this date, the parties have reached a settlement, even if paperwork to memorialize the settlement remains to be completed. (If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.)

6
7

_____ A mediation session with a court-appointed mediator was held on _____ [enter date], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

8
9
10
11

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)

12
13

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [enter date].

14
15

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

16
17

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

18

\* \* \* \* \*

19
20
21

**Situation Two: Informal Settlement Discussions Case: The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

22
23
24
25

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement, even if the paperwork to memorialize the settlement remains to be completed. (If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)

26
27

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

28

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the

2

    Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____     _____
          Print            Signature

Address: _____  Phone: _____

     _____  Email: _____

     _____