**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| TONY WILLIAMS, | 3:12-cv-00660-MMD-WGC |
| Plaintiff, | **ORDER** |
| vs. | |
| S.L. FOSTER, et. al. | |
| Defendants. | |

Before the court is Defendants' Motion to Strike the Second Amended Complaint and Motion to Strike the Fugitive Document Titled Plaintiff's Response to Answer to First Amended Complaint. (Doc. # 26.)[1] Plaintiff filed a response. (Doc. # 28.) Defendants filed a reply. (Doc. # 30.) Also before the court is Plaintiff's motion for leave to amend. (Doc. # 27.) Defendants filed a response. (Doc. # 29.)

**I.  MOTION TO STRIKE PLAINTIFF'S RESPONSE TO DEFENDANTS' ANSWER**

Defendants move to strike Plaintiff's response to their answer, asserting that it is a fugitive document. In his response, Plaintiff states that he has no objection to the document being stricken. (Doc. # 28 at 5.)

---
[1] Refers to court's docket number.

1

Federal Rule of Civil Procedure 7 governs the pleadings allowed to be filed in a case. A reply to an answer is only permitted by court order. Fed. R. Civ. P. 7(a)(7). The court did not order that Plaintiff be permitted to file a response to Defendants' answer; nor does the court view a response to the answer as necessary. Therefore, Defendants' motion to strike Plaintiff's response to Defendants' answer (Doc. # 26) is **GRANTED** and the response to the answer (Doc. # 22) is **STRICKEN**.

## II. MOTION TO STRIKE THE SECOND AMENDED COMPLAINT

**A. Argument**

Defendants initially argue that the Second Amended Complaint should be stricken because Plaintiff failed to seek leave of court before filing it in accordance with Federal Rule of Civil Procedure 15. Defendants also argue that Plaintiff's motion for leave to amend is deficient because Plaintiff did not attach the proposed amended complaint with the motion for leave to amend as is required by Local Rule 15-1. Defendants also contend that Plaintiff is outside the 60-day window set forth for the filing of amended pleadings in the scheduling order.

Plaintiff responds by first implying that he was permitted to file the Second Amended Complaint as a matter of course in light of the two ninety-day stays entered in the case. He then states that his failure to file the pleading without the accompanying motion for leave to amend was inadvertent.

**B. Background**

Plaintiff filed his application for leave to proceed in forma pauperis and proposed original complaint on December 18, 2012. (Doc. # 1.) On April 18, 2013, the court issued a screening order dismissing Plaintiff's complaint in its entirety with leave to amend. (Doc. # 6.)  He was advised to specifically identify each defendant, clarify what constitution right he believes each

defendant has violated, and support each claim with factual allegations about each defendant's actions. (*Id.*) The court gave Plaintiff thirty days to file an amended complaint and instructed him to title it the First Amended Complaint. (*Id.*)

On May 20, 2013, Plaintiff filed his First Amended Complaint. (Doc. # 10.)

On September 23, 2013, Defendants filed a report regarding results of the ninety-day stay, even though a ninety day stay had not been entered in this case at that time. (Doc. # 12.)

On October 2, 2013, the court issued a screening order relative to the First Amended Complaint. (Doc. # 16.) The court determined Plaintiff could proceed with a single claim that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated in relation to his alleged inability to obtain a lower disciplinary score and move to a lower security institution as a result of his status as an interstate compact inmate. (*Id.*) This claim was allowed to proceed against defendants Oxborrow, Baker and Foster. (*Id.*) His other claims were dismissed with prejudice. (*Id.*)

At the same time, the court entered a ninety-day stay of the action to allow the parties to explore settlement of the dispute. (*Id.*)

On October 15, 2013, the Attorney General's Office filed an acceptance of service on behalf of defendants Foster, Baker, and Oxborrow. (Doc. # 17.) Defendants filed their answer on November 25, 2013. (Doc. # 18.) They filed their status report regarding the ninety-day stay on December 30, 2013, indicating that the matter had not settled. (Doc. # 20.)

The court entered its scheduling order on December 30, 2013. (Doc. # 21.) Pursuant to the scheduling order, amendments to pleadings were to comply with Local Rule 15-1 and were to be filed and served within sixty days of the date of the scheduling order (on or before February 28, 2014). (*Id.*)

Plaintiff filed his Second Amended Complaint on February 18, 2014. (Doc. # 25.) Defendants then filed their motion to strike the Second Amended Complaint on February 20, 2014. (Doc. # 26.) Plaintiff filed his motion for leave to amend the Second Amended Complaint on March 3, 2014. (Doc. # 27.)

**C. Timeliness**

Pursuant to the scheduling order, any motion for leave to amend a pleading was to be filed and served within 60 days of the date of the scheduling order. Thus, it was to be filed on or before February 28, 2014. However, under Federal Rule of Civil Procedure 6(d), "[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a). Fed. R. Civ. P. 6(d). Therefore, Plaintiff was required to file any motion to amend a pleading on or before March 3, 2014, which is the day Plaintiff filed his motion for leave to amend. Therefore, Plaintiff's motion is timely.

**D. Local Rule 15-1**

Local Rule 15-1 states: "*Unless otherwise permitted by the Court*, the moving party shall attach the proposed amended pleading to any motion to amend, so that it will be complete in itself without reference to the superseding pleading..." Local Rule 15-1(a) (emphasis added).

Plaintiff explained in his motion for leave to amend that he did not attach the proposed amendment to the motion because the proposed amendment was already on file with the court and would be the exact same document. (Doc. # 27.) He did offer to resubmit the motion and complaint if that was the court's preference. (*Id*. at 2.)

Plaintiff did not technically comply with Local Rule 15-1(a). The court could deny the motion and order Plaintiff to re-submit his motion for leave to amend with the proposed

amended complaint, which is already on file with the court. This, however, would require the duplication of efforts on the part of Plaintiff, Defendant and the court. Local Rule 15-1(a) allows the court to allow a motion for leave to amend without the proposed amendment attached. The court will exercise its discretion in this instance to alleviate Plaintiff of the requirement to include the proposed amendment as an attachment to the motion for leave and consider the Second Amended Complaint, on file with the court at Doc. # 25, as the proposed amendment.

**E. With or Without Leave**

Federal Rule of Civil Procedure 15 allows a party to amend a pleading "once as a matter of course" if it is within "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Otherwise, amendment is only allowed if the other party consents in writing or the court grants leave to amend. Fed. R. Civ. P. 15(a)(2).

Defendants argue first that Plaintiff's Second Amended Complaint should be stricken because he did not seek leave of court for its filing, and then argue that Plaintiff's motion for leave to amend was untimely and deficient.

In this case, Defendants filed their answer to the First Amended Complaint on November 25, 2013, during the 90-day stay entered in the case, despite the court's admonition that no other pleadings or papers should be filed in the case during the stay. (*See* Doc. # 16 at 8:17-18.) Thus, as Plaintiff points out, he could not have properly filed an amended complaint during this time period. Moreover, it is not clear that Plaintiff could have filed an amended pleading as a matter of course at that time since a party is only permitted to file *one* amendment as a matter of course, and this was Plaintiff's second amendment. Regardless, Plaintiff has since

filed a motion for leave to amend, bringing his proposed amendment within the parameters of Rule 15(a)(2). Because the court has decided to allow Plaintiff to proceed despite his failure to attach the proposed amended complaint to his motion for leave to amend and treat the Second Amended Complaint on file as his *proposed* Second Amended Complaint, Defendants' motion to strike the Second Amended Complaint as untimely or otherwise procedurally deficient is **DENIED**.

### III. MOTION FOR LEAVE TO AMEND/SCREENING OF THE PROPOSED SECOND AMENDED COMPLAINT

The court will now turn to the issue of whether Plaintiff should be granted leave to amend and in analyzing this issue will screen the proposed amendment.

**A. Standard**

    **1. Leave to Amend**

Leave to amend is to be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). While the court should freely give leave to amend when justice requires, leave need not be granted where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

None of the documents filed by Defendants on this topic addresses the substance of Plaintiff's proposed Second Amended Complaint. (*See* Docs. # 26, # 29, # 30.) While they pointed out several perceived procedural deficiencies with the filing, they did not specifically argue that amendment would prejudice them, that it was sought in bad faith, would produce an undue delay in litigation or is futile. Accordingly, Plaintiff's motion for leave to amend (Doc. # 27) is **GRANTED**, and the court will now proceed with screening the proposed amendment.

**2. Screening**

In addition, Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696, 699 (9th Cir. 1988). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

"A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law." *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted). Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has found that at a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 678. The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the...claim is and the grounds upon which it rests."

*Twombly*, 550 U.S. at 555.  (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).  Allegations can be deemed "implausible" if there are "obvious alternative explanation[s]" for the facts alleged.  *Id*. at 682.

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  (citation omitted).  "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id*.  at 679.

Allegations in pro se complaints, "'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers[,]'" and must be liberally construed. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*)); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.  2010) (citation omitted). A district court should not dismiss a pro se complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."

*Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam) (internal quotation marks omitted).

"[W]e have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc). "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (citing *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc)). A district court should not dismiss a pro se complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam) (internal quotation marks omitted).

**B. Count I**

Count I states that the contract between the State of Hawaii and the State of Nevada for the implementation of the Interstate Corrections Compact provides that the receiving state shall make available to the inmate programs which are consistent with their individual needs. (Doc. # 25 at 4.) It goes on to state that the contract says that inmates shall be afforded the opportunity to participate in programs of occupational training and industrial or other therapeutic or rehabilitative work on the same basis as inmates from the receiving state. (*Id*.) These same allegations were included in the First Amended Complaint. (Doc. # 10 at 4.)

Plaintiff next alleges that his needs were not met at ESP in that he needed an opportunity to gain employment in the highest paying industrial work program possible so he could "amass

as much money possible for re-entry into society..." (Doc. # 25 at 5.) He contends he was not able to do so at ESP, while other prisoners similarly situated to Plaintiff were allowed to go to medium custody facilities and seek gainful employment in industrial work programs and participate in industrial work programs. (*Id*. at 6.) He grieved this issue to defendant Oxborrow, who denied the grievance. (*Id*. at 7.) He then appealed that decision to defendant Baker, who denied the grievance as well. (*Id*.) Finally, he appealed that decision to defendant Foster, who likewise denied the grievance. (*Id*.)

Plaintiff asserts that the Contract between the State of Hawaii and State of Nevada is a legal and binding contract, and the Contract Clause of Article One, Section 10 of the United States Constitution prohibits a state from passing a law impairing the obligation of contracts. (*Id*. at 8.) Plaintiff claims that Defendants acted in contravention of the contract. (*Id*.)

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const., amend XIV, § 1. "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008)) (internal quotation marks omitted). "Although the Equal Protection Clause ensures similarly situated persons are treated alike, it does not ensure absolute equality." *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003) (citation omitted). "To state a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furance*, 705 F.3d at 1030 (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). "The First step in determining whether the [prison officials] violated [the plaintiff's] right to equal protection is to identify the relevant class to which he belonged." *Id*. (citation omitted).

"The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Id*.

Where state action "does not implicate a fundamental right or suspect classification, the plaintiff can establish a 'class of one' equal protection claim by demonstrating that [he] 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). Thus, the defendant need only articulate a legitimate governmental interest that is rationally related to its policy. *See, e.g., McGinnis v. Royster*, 410 U.S. 263 (1973).

Here, Plaintiff appears to allege that because he was an interstate compact prisoner, he was not afforded the same opportunity to engage in work opportunities while other similarly situated inmates were able to do so. Plaintiff's allegations do not implicate a fundamental right or suspect classification, but construing his allegations liberally, he does state a claim that he was intentionally treated differently from others similarly situated with no rational basis. Plaintiff should be permitted to proceed with his equal protection claim against defendants Oxborrow, Baker, and Foster.

The majority of the remaining allegations contained within Count I are the same as those asserted in the First Amended Complaint. The court already found when it screened the First Amended Complaint that Plaintiff did not state claims for a constitutional violation related to the deprivation of a state-created liberty interest or the Constitution's prohibition against having a law that impairs the obligation of contracts when he was allegedly denied the opportunity to have gainful employment. Those claims were already dismissed with prejudice, and Plaintiff was not

permitted to raise them again in this amended pleading. Therefore, Plaintiff may proceed in Count I only with the equal protection claim as outlined above.

///

**C. Count II**

In Count II, Plaintiff asserts that he was transferred to Nevada from Washington with a classification score of 57 points, which he claims equates to a minimum classification designation. (Doc. # 25 at 9.) He claims that when he got to Nevada, he could not receive a classification designation less than medium because of his conviction and length of sentence. (*Id*.)

Plaintiff also avers that he wanted to apply for a commutation of his sentence, but this required a transfer away from ESP, a maximum security prison. (*Id*.) Plaintiff sought and was denied transfer to another institution. (*Id*. at 10-11.) He says he was told he could not be moved from ESP because of his gang affiliations, which he disputes, and claims that he then set about having this information expunged from his records. (*Id*. at 11.) He was unsuccessful in his efforts. (*Id*.) In addition, he contends that NDOC was transferring other prisoners to medium security prisons that had actual gang affiliations. (*Id*.) Plaintiff contends he was also denied transfer because he had an escape history. (*Id*.) In response, Plaintiff told prison administrators that he had merely jumped a fence inside the prison and went out of bounds, but had not attempted to leave the prison. (*Id*.) He claims that NDOC was allowing inmates who actually had a history of escape to transfer to medium custody facilities. (*Id*. at 12.)

Plaintiff was then told that his confinement at ESP was due to his points. (*Id*.) He maintains that prisoners with scores greater than his were allowed to reduce their points while Plaintiff was not. (*Id*.)

Plaintiff claims that he asked a caseworker why he was being discriminated against and she said it was because he was an out-of-state inmate. (*Id*. at 13.)

As with Count I, Plaintiff claims that he raised these issues to defendants Foster, Baker and Oxborrow, to no avail. (*Id*. at 14.)

Plaintiff may proceed with an equal protection claim based on the facts alleged in Count II against defendants Foster, Baker and Oxborrow.

**C. Count III**

In Count III, Plaintiff states that he endured thirteen and a half years of discrimination and deprivation of opportunities to obtain rehabilitation. (*Id*. at 15.) He claims he was never given a Security Threat Group (STG) designation in Hawaii or Washington, but he did receive such designation from Nevada. (*Id*.) He claims that Nevada refused to lift the STG designation. (*Id*.) He mentions again that other validated gang members were allowed to transfer to lesser custody facilities while Plaintiff was not. (*Id*.) He likewise re-alleges that inmates with actual history of escape were also permitted to transfer to lesser-custody facilities while he was not. (*Id*. at 16.) He goes on to re-allege what is asserted in Count I. (*Id*. at 16-17.)

Plaintiff may proceed with an equal protection claim in Count III to the extent he alleges that he was treated differently from other Nevada inmates in terms of his STG designation and ability to transfer to lesser custody facilities because of his status as an interstate compact inmate.

**IV. CONCLUSION**

The court's rulings are summarized as follows:

(1) Defendants' motion to strike Plaintiff's response to Defendants' answer (Doc. # 26) is **GRANTED** and the response to the answer (Doc. # 22) is **STRICKEN**;

(2) Defendant's motion to strike the Second Amended Complaint (Doc. # 26) is **<u>DENIED</u>**;

(3) Plaintiff's motion for leave to amend (Doc. # 27) is **<u>GRANTED</u>**;

(4) Plaintiff may **<u>PROCEED</u>** with his claims in his Second Amended Complaint (Doc. # 25) against defendants Foster, Baker and Oxborrow that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated, as set forth above;

(5) Defendants shall answer or otherwise respond to the Second Amended Complaint within **<u>FOURTEEN DAYS</u>** of the entry of this order;

(6) The following deadlines from the scheduling order previously entered in this case (Doc. # 21) are amended as follows (all other deadlines and provisions shall remain in place):

    (a) Discovery in this action shall be completed on or before **ninety days** from the date of this Order;

    (b) Any discovery motion shall be filed and served no later than **105 days** from the date of this Order;

    (c) Any party who desires to further amend the scheduling order must file a motion and make a good cause showing.

**IT IS SO ORDERED**.

DATED: March 14, 2014.

 

                                                 **WILLIAM G. COBB**
                                                 **UNITED STATES MAGISTRATE JUDGE**